UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW PEACH, | ) |
| | ) |
| Plaintiff, | ) |
| | )    **COMPLAINT AND** |
| against | )    <u>**JURY DEMAND**</u> |
| | ) |
| | ) |
| TOMMY BOY ENTERTAINMENT, LLC, | ) |
| d/b/a TOMMY BOY DISTRIBUTION and | ) |
| DAVID PARKER, | ) |
| | ) |
| Defendants. | ) |
| | ) |

C.A. No. _____

Plaintiff Matthew Peach ("plaintiff" or "Mr. Peach"), by and through his attorneys,

Rosenberg, Giger and Perala P.C., as and for his Complaint against defendants Tommy Boy

Entertainment, LLC d/b/a Tommy Boy Distribution and David Parker, alleges and avers as

follows:

<u>**NATURE OF THE ACTION**</u>

1.      Through this action, plaintiff Matthew Peach seeks to hold defendants

accountable for their conversion of royalties purchased by plaintiff through the online royalty

marketplace Royalty Exchange, Inc., as well as their concomitant fraudulent statements and

collusion with the seller of rights in those royalties to improperly divert plaintiff's funds.

2.      In December 2018, Mr. Peach purchased a royalty stream from producer and

record label owner Leroy McMath ("McMath"), generated by a catalogue of 1990s hip hop

recordings owned and controlled by McMath through his record label Power Entertainment Co.,

Inc. (the "Royalty Stream").  Following that purchase, McMath instructed his distributor,

defendant Tommy Boy Entertainment, LLC d/b/a Tommy Boy Distribution ("Tommy Boy") to

pay the Royalty Stream - - which would otherwise be paid to McMath under his agreement with Tommy Boy - - to Royalty Exchange, as administrator for plaintiff, which Tommy Boy did without incident for nearly three years.

3.      Then, commencing in October 2021, pursuant to a wrongful and unauthorized Letter of Direction issued by McMath to Tommy Boy, Tommy Boy suddenly ceased paying the Royalty Stream to Royalty Exchange (as the administrator for plaintiff) and commenced paying the Royalty Stream to McMath, who - - as Tommy Boy is aware - - is a felon who has been convicted and incarcerated for multiple serious financial crimes, including fraud and identity theft.  After Mr. Peach commenced a lawsuit in Georgia to recover those wrongful payments from McMath, McMath sent a revised Letter of Direction to Tommy Boy properly redirecting payment of the Royalty Stream to Mr. Peach, through his administrator Royalty Exchange.  But Tommy Boy has refused to honor this most recent Letter of Direction from McMath, despite its knowledge that Mr. Peach is the rightful owner of the Royalty Stream.

4.      Instead, Tommy Boy has retained certain of the royalties due to Mr. Peach and has paid a substantial portion of those royalties to McMath and certain third parties, directly contrary to its fraudulent assurances that it had placed those royalties on hold, and could not pay them to any person or entity, pending the resolution of plaintiff's Georgia action against McMath.  In addition, Tommy Boy has paid over $30,000 of the Royalty Stream to defendant David Parker, falsely labelling those payments as "legal fees," despite the fact that Parker is not an attorney in good standing, as he resigned from the New York bar in 2009 following his conviction for tax fraud.

5.      In light of the foregoing, described in more detail below, plaintiff asserts claims against defendants for conversion, unjust enrichment, fraud and promissory estoppel, seeking to

recover all royalties that they improperly retained, converted and/or paid to third parties,

together with interest thereon as provided by law and other relief, as requested below.

## PARTIES

6.      Plaintiff Matthew Peach is a citizen and resident of England, in the United

Kingdom.

7.      On information and belief, defendant Tommy Boy Entertainment, LLC d/b/a

Tommy Boy Distribution ("Tommy Boy") is a limited liability company organized under the

laws of the State of Delaware with its principal place of business in New York, New York.

8.      On information and belief, defendant David Parker is a citizen and resident of the

State of Florida.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over plaintiff's claims asserted herein

pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, exclusive of

interest and costs, and this is an action between citizens of a state, *i.e.*, defendants, and a citizen

and subject of a foreign state, *i.e.*, plaintiff.

10.     This Court has personal jurisdiction over defendant Tommy Boy in that it

maintains its principal place of business in New York, New York, at which it conducts

substantial ongoing business; and against all defendants, *inter alia*, as the claims asserted in this

action arise out of conduct and activities of defendants within, or purposefully directed toward,

the State of New York.

11.     Venue is proper in this judicial district pursuant to, *inter alia*, 28 U.S.C.

§ 1391(a)(2) and (a)(3) in that a substantial portion of the events and omissions giving rise to

plaintiff's claims occurred in this judicial district and this is a district in which defendants are subject to the court's personal jurisdiction.

## FACTS COMMON TO ALL CAUSES OF ACTION

Leroy McMath's Distribution Deal with Tommy Boy

12.     Non-party Leroy McMath ("McMath") is a music producer who released several successful hip-hop musical recordings in the 1990s through his company Power Entertainment Co., Inc. ("Power Entertainment"), which, upon information and belief, he owns, operates and controls.

13.     Defendant Tommy Boy entered into a Distribution Agreement dated August 15, 2010 with McMath (the "Distribution Agreement"), pursuant to which McMath granted to Tommy Boy the exclusive right to license and sell Power Entertainment's music catalogue. Under the Distribution Agreement, Tommy Boy is responsible for distributing the royalty payments generated by the aforementioned hip-hop music catalogue (*i.e.*, the Royalty Stream) to the ultimate beneficial owner of those royalties, who, at the time of execution of the Distribution Agreement, was McMath but, as discussed below, is presently plaintiff.

Plaintiff's Purchase of the Royalty Stream

14.     On or about August 3, 2018, McMath, individually and on behalf of Power Entertainment, entered into a Listing Agreement with online royalty marketplace Royalty Exchange, Inc. ("Royalty Exchange") to facilitate his sale of the right to receive royalty payments from the Royalty Stream.  Pursuant to that Listing Agreement, Royalty Exchange acted as a broker to assist the "Seller" - - identified in the Listing Agreement as "Leroy McMath individually and on behalf of Power Entertainment" - - in finding a purchaser for the Royalty Stream.

4

15.     Under the Listing Agreement, McMath/Power Entertainment agreed to sell the

Royalty Stream through Royalty Exchange.  The Royalty Stream is referred to in the Listing

Agreement as the "Asset," and defined as "100% of Seller's interest in the rightsholder's share

of all royalties attributable to the sound recordings listed in Exhibit B," which the Listing

Agreement states is "currently distributed by Tommy Boy Records/Warner Music Group."

(The sound recordings listed in Exhibit B to the Listing Agreement, the exploitation of which

generate the Royalty Stream, are hereinafter referred to in this Complaint as the "McMath

Catalogue.")

16.     In the Listing Agreement, McMath and Power Entertainment acknowledge that

they are "irrevocably assigning the income rights defined in the Asset description, regardless of

which distributor collects those rights," and agree that "if any distributor other than a Current

Distributor collects royalties for the Asset, the buyer will be entitled to those royalties."

17.     As contemplated and facilitated by the Listing Agreement, on or about

September 20, 2018, McMath, entered into a Purchase Agreement with non-party Matthew

Smith, pursuant to which Mr. Smith purchased 100% of the Royalty Stream (the "Smith

Purchase Agreement").

18.     In the Smith Purchase Agreement, McMath agreed that he "is and shall remain a

member in good standing with [his] distributor [*i.e.*, Tommy Boy] and has not and shall not do

anything that would impair Purchaser's right to receive the Assigned Royalties."

19.     On or about September 20, 2018, McMath and Power Entertainment issued an

irrevocable Letter of Direction (the "First Letter of Direction") to Tommy Boy that provides,

*inter alia*, as follows:  "Tommy Boy Distribution is hereby authorized and directed to pay to

Royalty Exchange Inc. ('Assignee'), 100% of my interest in all 'Net Receipts' as defined in and

currently payable to me under my distribution agreement with you dated August 15, 2010" - -

*i.e.*, the Distribution Agreement.  The First Letter of Direction further confirms that "this

direction shall be irrevocable by me in perpetuity."

20.     Pursuant to the irrevocable First Letter of Direction, McMath instructed Tommy

Boy to pay 100% of the Royalty Stream to Royalty Exchange, which acted as the administrator

for Mr. Smith in collecting from Tommy Boy and remitting to Mr. Smith the Royalty Stream

purchased in the Smith Purchase Agreement.

21.     The First Letter of Direction further provided that "Tommy Boy Distribution is

also hereby authorized and directed to accept all future requests from the Assignee with regard

to changes to the payee, bank details, and account information associated with the related

payments."

22.     Royalty Exchange acted as an independent payment administrator and collected

from Tommy Boy, on behalf of Mr. Smith, the Royalty Stream generated in respect of the

McMath Catalogue.

23.     On or about December 6, 2018, Mr. Smith entered into a subsequent Purchase

Agreement assigning his rights and interests in the Royalty Stream to plaintiff Matthew Peach

(the "Peach Purchase Agreement").  The Peach Purchase Agreement states in relevant part:

> "Seller shall direct its royalty distributor, Tommy Boy
> ('Distributor'), and any other paying entity to pay the Assigned
> Royalties directly to Purchaser or Purchaser's administrator.  Seller
> shall execute any document required by any paying entity necessary
> to assign the Assigned Royalties."

24.     On or about December 10, 2018, Mr. Peach entered into a Royalty Accounting

Agreement permitting Royalty Exchange to continue to act as an independent payment

administrator and collect the Royalty Stream from Tommy Boy on Mr. Peach's behalf.

25.     For approximately 34 months - - *i.e.*, from December 2018 through October 2021 - - Tommy Boy wired royalty payments generated by the Royalty Stream, pursuant to the First Letter of Direction, to Royalty Exchange, which subsequently administered those payments as Mr. Peach's agent and transferred the balance of funds due to him.

26.     The October 2021 royalty statement issued by Tommy Boy to Royalty Exchange shows a "Balance Paid for Previous Period" of $7,989.55, which constituted the September 2021 earnings in respect of the Royalty Stream.  This was the last payment that Royalty Exchange received from Tommy Boy, on behalf of Mr. Peach, in respect of the Royalty Stream.

McMath Defrauds Plaintiff with Tommy Boy's Assistance

27.     On information and belief, McMath has been convicted of at least three separate felonies in multiples states, including Michigan and Georgia, for fraud, identity theft and other financial crimes.  McMath was most recently incarcerated in the State of Georgia from June 2015 through August 2019.

28.     Consistent with McMath's history of fraudulent acts, on or about October 26, 2021, McMath wrongfully caused a subsequent Letter of Direction (the "Second Letter of Direction") to be issued to Tommy Boy, directing the distributor to deliver all royalty payments, royalty statements and any other correspondence in respect of the Royalty Stream or the McMath Catalogue to McMath, via a new company that McMath had established named Power Artist Music Co., Inc.

29.     The Second Letter of Direction purported to change the payee identified in the explicitly irrevocable First Letter of Direction, redirecting the Royalty Stream from Royalty Exchange to "Power Artist Music Inc." ("Power Artist") - - *i.e.*, McMath's new company - - and provided the bank routing and account numbers for wire payments to that newly created entity.

30.     Commencing in November 2021, pursuant to the Second Letter of Direction, Tommy Boy began sending distribution statements and payments generated by the Royalty Stream to McMath and Power Artist.  On information and belief, Tommy Boy knew at this time that McMath had sold the rights to receive payments of the Royalty Stream in respect of the McMath Catalogue through Royalty Exchange, which distributed payments to the ultimate purchaser of those royalties - - *i.e.*, Mr. Peach.  On information and belief, Tommy Boy also knew that McMath did not posses the right to "revoke" the irrevocable First Letter of Direction, and that the Second Letter of Direction represented an attempt by McMath to divert royalties owned by Mr. Peach to McMath's own benefit.

31.     On or about December 20, 2021, McMath, on behalf of "Power Entertainment/Power Artist Music, Inc.," entered into an amendment to the 2010 Distribution Agreement (the "Amendment") with Tommy Boy providing that Tommy Boy would render to McMath a royalty pre-payment (commonly known in the music industry as an "advance") of $100,000.00 (the "Advance") in respect of future royalties due for the McMath Catalogue - - *i.e.*, the same royalties owned by Mr. Peach.  Specifically, that amendment provided that "[t]he Advance shall be recoupable against Fifty Percent (50%) of the New Receipts otherwise payable to you pursuant to the Agreement and the remaining Fifty Percent (50%) of New Receipts shall be paid through to you."

32.     Upon information and belief, Tommy Boy wired the $100,0000 advance to McMath on or about December 21, 2021.  On information and belief, Tommy Boy was aware of McMath's criminal convictions for fraud and financial crimes, and his history of incarceration, at the time that Tommy Boy entered into the Amendment with McMath and paid him the $100,000 Advance.

8

33.     On or about January 20, 2022, McMath requested that Tommy Boy email its monthly royalty statements directly to him, referencing Power Entertainment, and removing all reference to Royalty Exchange from those statements.

34.     In or about January 2022, Royalty Exchange made inquiry of Tommy Boy concerning why it had stopped receiving royalty statements from Tommy Boy in respect of the Royalty Stream.  On or about January 27, 2022, Haylee Palmer, a bookkeeper for Tommy Boy, responded to those inquiries by confirming, in an email sent to Royalty Exchange, that Tommy Boy had ceased royalty payments to Royalty Exchange because Tommy Boy had agreed to "pay Leroy direct."  On information and belief, Tommy Boy knew that those payments to McMath constituted a diversion of the Royalty Stream that had been purchased, and was owned in its entirety, by Mr. Peach.

35.     From December 2021 through in or about May 2022, Tommy Boy issued statements and related royalty payments constituting 50% of the net royalties generated by the McMath Catalogue to McMath - - and his companies, Power Entertainment and Power Artist - - via ACH transfer.  The other 50% of those royalties was ostensibly applied by Tommy Boy to reduce the outstanding balance of (or in music industry parlance, to "recoup") the $100,000 advance that had already been transferred by Tommy Boy to McMath.

36.     Between December 2021 and May 2022 Tommy Boy transferred the aggregate sum of $121,701.50 to McMath and his companies.  On information and belief, those payments were made by Tommy Boy with full knowledge that McMath had sold the right to receive those payments - - *i.e.,* the Royalty Stream - - to Mr. Peach.

Plaintiff's Georgia Lawsuit Against McMath

37.     Commencing in or about January 2021, Royalty Exchange inquired repeatedly of Tommy Boy and McMath concerning McMath's diversion of the Royalty Stream to his own benefit.  Over the course of the subsequent six months, through June 2021, McMath made multiple misrepresentations to Royalty Exchange regarding the Royalty Stream, including that the delay in payments to Royalty Exchange was the result of McMath's changing distributors from Tommy Boy to a new distributor named "Triad."  This statement was entirely false.

38.     On information and belief, Tommy Boy knew, as a result of Royalty Exchange's repeated inquiries, that Royalty Exchange remained entitled to collect the Royalty Stream on behalf of plaintiff and that the Second Letter of Direction and the Amendment to the Distribution Agreement - - redirecting payment of the Royalty Stream to McMath - - constituted a diversion by McMath of the Royalty Stream owned by Mr. Peach.  Nonetheless, Tommy Boy paid McMath the Advance and continued to make royalty payments to McMath under the fraudulent Second Letter of Direction through May 2022.

39.     In June 2022, plaintiff informed McMath of plaintiff's intent to commence a lawsuit against him in Georgia, where McMath resides.  As a direct consequence of that communication, McMath issued yet another Letter of Direction to Tommy Boy (the "Third Letter of Direction") dated June 18, 2022, directing Tommy Boy once again to pay the Royalty Stream to Royalty Exchange, on behalf of plaintiff.  This Third Letter of Direction reverses the previous, fraudulent Second Letter of Direction issued by McMath on October 26, 2021.

40.     On information and belief, McMath received no further royalty payments in respect of the Royalty Stream after issuing the Third Letter of Direction on June 18, 2022.

41.     In July 2023, plaintiff commenced a lawsuit against McMath, Power

Entertainment and Power Artist in the Superior Court of Georgia, Dekalb County (the "Georgia

Action").  In the Georgia Action, plaintiff asserts claims against three defendants - - McMath,

Power Entertainment and Power Artist - - for, *inter alia*, breach of contract, conversion, tortious

interference with contractual and business relations and fraud.  Tommy Boy is not a party to the

Georgia Action.  In the Georgia Action, plaintiff seeks to recover damages in the amount of

$121,701.50 - - *i.e.,* the aggregate payments made by Tommy Boy to McMath and his

companies between December 2021 and May 2022 - - as well as interest thereon, punitive

damages, attorneys fees and other relief.

42.     On or about January 3, 2025, the Court in the Georgia Action granted summary

judgment to plaintiff on all of his claims and directed the parties in that action to present

evidence at a "final hearing" concerning the calculation of damages to be awarded to plaintiff.

Tommy Boy Defrauds Plaintiff and Converts His Royalties

43.     On information and belief, following McMath's issuance to Tommy Boy of the

Third Letter of Direction in June 2022, Tommy Boy ceased making payments to McMath and

his companies in respect of the Royalty Stream.  Nonetheless, despite plaintiff's repeated

inquiries to Tommy Boy, through his legal counsel, Tommy Boy has not resumed payment of

the Royalty Stream to Royalty Exchange, as administrator for plaintiff.

44.     Prior to and during the pendency of the Georgia Action, plaintiff repeatedly

reached out to Tommy Boy in an effort to convince Tommy Boy to resume payment of the

Royalty Stream to Royalty Exchange, as administrator for plaintiff, but Tommy Boy not only

refused to do so, it misrepresented to plaintiff that it was placing the Royalty Stream on hold,

and would not make any payments of the Royalty Stream to any person or entity, pending the resolution of the Georgia Action.

45.      In this regard, on or about June 30, 2022, Mr. Peach's counsel in his Georgia Action against McMath spoke by telephone with defendant Parker, who claimed he was representing Tommy Boy (despite having resigned from the bar in or about 2009 in connection with his conviction for tax fraud).  During this conversation, Parker advised Mr. Peach's counsel that Tommy Boy had placed the Royalty Stream on hold and would not make any distributions of royalties to any person or entity until the Georgia Action was resolved by settlement or judgment.

46.      In addition, in an email dated July 6, 2022, defendant Parker, acting on behalf of Tommy Boy, wrote the following to Mr. Peach's counsel in the Georgia Action:

> Since the terms of the letters of direction seem to be in conflict and you have filed a lawsuit against Leroy McMath claiming among other matters a right to the royalties under the agreement, TBA [*i.e.*, Tommy Boy] must take the position of a stakeholder.  TBA cannot account and pay royalties to anyone unless all parties to the complaint enter into a court approved settlement and dismiss the complaint and/or the judge in the matter orders TBA to pay a certain party.

47.      In sum, in June and July of 2022, when Mr. Peach commenced the Georgia Action against McMath, defendants represented to Mr. Peach that Tommy Boy had placed the Royalty Stream on hold and "cannot account and pay royalties to anyone" pending the resolution of the Georgia Action.

48.      Between July 2022 and March 2025, Parker repeated this representation on multiple occasions to counsel for plaintiff, during telephone conversations in which plaintiff's counsel sought to convince Tommy Boy to resume payment of the Royalty Stream to Royalty Exchange, as administrator for plaintiff.

49.     During these multiple conversations, David Parker identified himself as an outside "consultant" for Tommy Boy who functions as the director of business and legal affairs for Tommy Boy.  David Parker's LinkedIn profile identifies him as "Business and Legal Affairs Consultant at Tommy Boy Entertainment and Related Companies."  In fact, Parker is a former attorney who resigned from the New York State bar in 2009 following his felony conviction for tax fraud.

50.     Mr. Peach relied on defendants' repeated representations that Tommy Boy had placed a hold on the Royalty Stream and could not pay any portion of those royalties to any person or entity. In particular, and without limitation, Mr. Peach relied on that representation by declining to pursue litigation or other collection efforts against Tommy Boy during the pendency of the Georgia Action.  In short, Mr. Peach believed defendants' representations - - which, as set forth below, were entirely false and fraudulent - - that, upon the resolution of the Georgia Action, Tommy Boy would release to Mr. Peach the full amount of the Royalty Stream generated in or after June 2022, which it had been holding during the pendency of that Action.

51.     During the course of the discussions between plaintiff's counsel and Parker, on behalf of Tommy Boy, counsel for plaintiff requested that Tommy Boy provide royalty statements for the period June 2022 through the present - - *i.e.*, the period following McMath's issuance of the Third Letter of Direction redirecting payment of the Royalty Stream to Royalty Exchange, as administrator for plaintiff.  Through this request, plaintiff sought to learn the amount of royalties generated  by the Royalty Stream that Tommy Boy had purportedly placed on hold and would release upon resolution of the Georgia Action.

52.     On or about March 21, 2025, after months of delay, Tommy Boy finally provided certain data in respect of the Royalty Stream in the form of an Excel file (the "Royalty

Data").  As reflected in the Royalty Data, Tommy Boy asserts, *inter alia*, that between June 2022 and the end of 2023, approximately $193,000 in royalties had been generated as part of the Royalty Stream.  Of those royalties, the Royalty Data shows that (1) Tommy Boy diverted to itself approximately $78,000 as partial repayment of the Advance to McMath; (2) Tommy Boy paid approximately $30,000 to defendant Parker, labelling them as "legal fees," despite Parker's status as a disbarred attorney; (3) Tommy Boy was holding approximately $84,438 on balance for the benefit of Mr. Peach; and (4) Tommy Boy had stopped accounting for the Royalty Stream altogether as of January 2024 and attributed $0 to the Royalty Stream thereafter.

53.    When counsel for Mr. Peach inquired of defendant Parker why the Royalty Data showed no royalties in and after January 2024, Parker responded by email that "Power Entertainment, related entities and Leroy McMath ('Power') sold its interest in the copyright of the sound recordings to its catalog on December 7, 2023.  After that date, Power was no longer involved with the catalog."  On information and belief, Tommy Boy has paid the Royalty Stream for the period in and after January 2024 to a purported third-party buyer of McMath's copyright interests in the McMath Catalogue, despite Tommy Boy's knowledge that any such third-party sale by McMath in December 2023 - - if, indeed, it occurred - - would be fraudulent and subject to Mr. Peach's prior purchase of the Royalty Stream.

54.    The approximately $30,000 dollars in "legal fees" purportedly paid to defendant Parker are entirely improper for at least two reasons, without limitation:  (1) Parker resigned from the New York bar for disciplinary reasons in 2009 following his conviction for tax fraud, and thus the "legal fees" purportedly paid by Tommy Boy are payments in support of the unauthorized practice of law; (2) even if Parker could properly receive payment of "legal fees"

14

(and he cannot), Tommy Boy has no legal right to deduct such fees from the amount of the Royalty Stream payable to plaintiff.

55.     In short, Tommy Boy has refused to pay to plaintiff any portion of the Royalty Stream since its final payment to Royalty Exchange in October 2021, despite plaintiff's unquestionable right to receive payment of those royalties through his administrator, Royalty Exchange.  Rather, Tommy Boy has (1) retained a large portion of the Royalty Stream for its own benefit; (2) paid a portion of those royalties to defendant Parker, a disbarred attorney, as improper "legal fees" for his unauthorized practice of law; and (3) paid the entire Royalty Stream generated in and after January 2024 to an unidentified third-party subsequent purchaser of copyrights in the McMath Catalogue.

## COUNT I
## (Conversion)

56.     Plaintiff incorporates herein by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

57.     Plaintiff has an ownership right and interest in the Royalty Stream and a right to possession of all royalties that constitute part of the Royalty Stream - - *i.e.,* royalties payable by McMath's distributor in connection with the exploitation of the McMath Catalogue.

58.     Defendants have assumed control over the Royalty Stream and have diverted those funds to their own benefit despite no right or authority to do so.  In this regard, as set forth above, defendant Tommy Boy has retained and refused to pay to plaintiff any royalties constituting the Royalty Stream and has diverted a portion of those royalties to McMath, defendant Parker and an unidentified third-party purchaser of the McMath Catalogue, all without legal authority.

59.     As a result of plaintiff's conversion of the Royalty Stream, plaintiff has been

damaged in an amount to be determined at trial.

## COUNT II
## (Unjust Enrichment)

60.     Plaintiff incorporates herein by reference in their entirety the preceding

paragraphs of this Complaint, as if fully set forth herein.

61.     Defendants have benefited at plaintiff's expense by withholding and retaining for

their own benefit, and refusing to pay to plaintiff, the Royalty Stream.

62.     It is against equity and good conscience to permit defendants to retain the

Royalty Stream and to continue to enjoy the benefit of those funds, at plaintiff's expense.

63.     Defendants have been unjustly enriched in the amount of the Royalty Stream that

they have retained and refused to pay to plaintiff, despite plaintiff's undeniable right to receive

payment of those royalties.

64.     As a result, the Court should order defendants to disgorge to plaintiff all royalties

constituting part of the Royalty Stream that defendants have received and retained, as well as

award such damages and other related relief as determined at trial.

## COUNT III
## (Fraud)

65.     Plaintiff incorporates herein by reference in their entirety the preceding

paragraphs of this Complaint, as if fully set forth herein.

66.     As alleged above, defendant Parker, acting on behalf of defendant Tommy Boy,

misrepresented on multiple occasions to counsel for plaintiff that Tommy Boy had placed a hold

on the Royalty Stream, and could not make payment of royalties generated as part of the royalty

Stream to any person or entity.  This was a material misrepresentation, as Tommy Boy had not,

in fact, placed a hold on the Royalty Stream and did distribute the Royalty Stream to individuals

and/or entities other than plaintiff, including Tommy Boy itself, Parker, and an unidentified third-party who purportedly purchased a copyright interest in the McMath Catalogue.

67.    Defendants knew that their misrepresentations concerning the placing of a hold on the Royalty Stream were false at the time they were made.

68.    In making those false representations, defendants intended to induce plaintiff to fail to take any legal or other action against Tommy Boy seeking payment of the Royalty Stream and/or injunction against further distribution of the Royalty Stream, including without limitation the filing of a lawsuit or other collection actions.

69.    Plaintiff justifiably relied on defendants' misrepresentations by declining to file a lawsuit or take any other action against Tommy Boy in respect of the Royalty Stream for the entire period from June 2022 through the filing of the present action.  Plaintiff decided to "stand down" against Tommy Boy during this period of nearly three years because he reasonably believed that, upon the resolution of the Georgia Action, Tommy Boy would release to plaintiff the entire amount of the Royalty Stream purportedly being held by Tommy Boy for his benefit.

70.    During the period of plaintiff's reasonable reliance on defendants' material misrepresentations, and contrary to those fraudulent statements, Tommy Boy diverted substantial portions of the Royalty Stream to itself, defendant Parker and an unidentified third party who purportedly purchased a copyright interest in the McMath Catalogue.

71.    Plaintiff has been damaged as a result of defendants' fraudulent misrepresentations in an amount to be determined at trial, including without limitation the amount of royalties diverted by Tommy Boy to itself, defendant Parker and the aforementioned third party.

17

## COUNT IV
### (Promissory Estoppel)

72.    Plaintiff incorporates herein by reference in their entirety the preceding

paragraphs of this Complaint, as if fully set forth herein.

73.    As alleged above, defendants made a clear and unambiguous promise to plaintiff

that Tommy Boy had placed, or would place, a hold on the Royalty Stream and would not make

payment of royalties generated as part of the royalty Stream to any person or entity pending the

resolution of the Georgia Action.

74.    Plaintiff reasonably and foreseeably relied on defendants, promises by declining

to file a lawsuit or take any other action against Tommy Boy in respect of the Royalty Stream

for the entire period from June 2022 through the filing of the present action.  Plaintiff decided to

"stand down" against Tommy Boy during this period of nearly three years in reliance on

defendants' promise that Tommy Boy would place a hold on the Royalty Stream and, upon the

resolution of the Georgia Action, would release to plaintiff the entire amount of the Royalty

Stream purportedly held by Tommy Boy for his benefit.

75.    During the period of plaintiff's reliance on defendants' promises, and contrary to

those promises, Tommy Boy diverted substantial portions of the Royalty Stream to itself,

defendant Parker and an unidentified third party who purportedly purchased a copyright interest

in the McMath Catalogue.

76.    Plaintiff has been damaged as a result of his reasonable and foreseeable reliance

on defendants' false promises in an amount to be determined at trial, including without

limitation the amount of royalties diverted by Tommy Boy to itself, defendant Parker and the

aforementioned third party.

## **PRAYERS FOR RELIEF**

WHEREFORE, based upon the foregoing allegations and averments, plaintiff Matthew

Peach respectfully demands that this Court enter judgment in his favor and against defendants

as follows:

A.    Directing defendants to release and pay to plaintiff all royalties constituting any portion of the Royalty Stream that defendants have received and retained for their own benefit, together with interest as provided by law.

B.    Compensatory damages in an amount to be determined at trial.

C.    Punitive and/or exemplary damages in an amount to be determined at trial.

D.    An award of attorney's fees and costs incurred by plaintiff in connection with this action.

E.    Such other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues and claims so triable.

Dated:   June 20, 2025
         New York, New York

ROSENBERG, GIGER & PERALA P.C.

By: _Matthew H. Giger_____
Matthew H. Giger
152 West 57th Street, 18th Floor
New York, NY  10019
Tel  (646) 494-5000
Fax  (646) 595-0590

*Attorneys for Plaintiff Matthew Peach*