UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MATTHEW PEACH, | ) | C.A. No.  1:25-cv-5191-PKC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **SECOND AMENDED COMPLAINT** |
| against | ) | **AND JURY DEMAND** |
| | ) | |
| | ) | |
| TOMMY BOY ENTERTAINMENT, LLC, | ) | |
| d/b/a TOMMY BOY DISTRIBUTION and | ) | |
| DAVID PARKER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Matthew Peach ("plaintiff" or "Mr. Peach"), by and through his attorneys,

Rosenberg, Giger and Perala P.C., as and for his Second Amended Complaint against

defendants Tommy Boy Entertainment, LLC d/b/a Tommy Boy Distribution and David Parker,

alleges and avers as follows:

### NATURE OF THE ACTION

1.      Through this action, plaintiff Matthew Peach seeks to hold defendants

accountable for their fraud and conversion of royalties purchased by plaintiff through the online

royalty marketplace Royalty Exchange, Inc. ("Royalty Exchange"), including defendants'

surreptitious collusion with the seller of the rights in those royalties to improperly divert

plaintiff's funds.

2.      In December 2018, Mr. Peach purchased a royalty stream from producer and

record label owner Leroy McMath ("McMath"), generated by a catalogue of 1990s hip hop

recordings owned and controlled by McMath through his record label Power Entertainment Co.,

Inc. (the "Royalty Stream").  Following that purchase, McMath instructed his distributor,

defendant Tommy Boy Entertainment, LLC d/b/a Tommy Boy Distribution ("Tommy Boy") to pay the Royalty Stream - - which would otherwise be paid to McMath under his agreement with Tommy Boy - - to Royalty Exchange, as administrator for plaintiff, which Tommy Boy did without incident for nearly three years.

3.      Commencing in October 2021, pursuant to a wrongful and unauthorized Letter of Direction issued by McMath to Tommy Boy, Tommy Boy suddenly ceased paying the Royalty Stream to Royalty Exchange (as the administrator for plaintiff) and began paying the Royalty Stream to McMath, who - - as Tommy Boy is aware - - is a felon who has been convicted and incarcerated for multiple serious financial crimes, including fraud and identity theft.  After Mr. Peach commenced a lawsuit in Georgia to recover those wrongful payments from McMath, McMath sent a revised Letter of Direction to Tommy Boy properly redirecting payment of the Royalty Stream to Mr. Peach, through his administrator Royalty Exchange.  But Tommy Boy has refused to honor this most recent Letter of Direction from McMath, despite its knowledge that Mr. Peach is the rightful owner of the Royalty Stream.

4.      Instead, Tommy Boy retained certain of the royalties due to Mr. Peach and paid a substantial portion of those royalties to McMath, directly contrary to its fraudulent assurances that it had placed those royalties on hold and could not pay them to any person or entity, pending the resolution of plaintiff's Georgia action against McMath.  Indeed, on information and belief, Tommy Boy purchased the McMath/Power Entertainment catalogue at the end of 2023, and, despite full knowledge that plaintiff is entitled to payment of the Royalty Stream generated by that catalogue, has converted to its own benefit *all* of the royalties received - - and owed to plaintiff - - following that acquisition.  In addition, Tommy Boy has paid over $30,000 of the Royalty Stream to defendant David Parker, falsely labelling those payments as "legal

fees," despite the fact that Mr. Parker is not an attorney in good standing, as he resigned from the New York bar in 2009 following his conviction for tax fraud.

5.     In light of the foregoing, described in more detail below, plaintiff asserts claims against defendants for conversion, unjust enrichment, fraud and promissory estoppel, seeking to recover all royalties that defendants improperly retained, converted and/or paid to third parties (including McMath), together with interest thereon as provided by law and other relief, as requested below.

## **PARTIES**

6.     Plaintiff Matthew Peach is a citizen and resident of England, in the United Kingdom.

7.     On information and belief, based, *inter alia*, upon the under-oath response of defendant Tommy Boy Entertainment, LLC d/b/a Tommy Boy Distribution ("Tommy Boy") to plaintiff's jurisdictional interrogatory, Tommy Boy is a limited liability company organized under the laws of the State of Delaware with three members (1) an individual who is a citizen of (with a primary residence in) the State of New York; (2) an individual who is a dual citizen of the United States and Hong Kong, who, although he was residing in Hong Kong at the time this action was filed, is a permanent resident and citizen of the State of California; and (3) a Trust in respect of which the grantor, trustees and beneficiaries are all citizens of (with primary residences in) the State of New York.

8.     On information and belief, defendant David Parker is a citizen and resident of the State of Florida.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over plaintiff's claims asserted herein pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, exclusive of interest and costs, and this is an action between citizens of a state, *i.e.*, defendants, and a citizen and subject of a foreign state, *i.e.*, plaintiff.

10.     This Court has personal jurisdiction over defendant Tommy Boy in that it maintains its principal place of business in New York, New York, at which it conducts substantial ongoing business; and against all defendants, *inter alia*, as the claims asserted in this action arise out of conduct and activities of defendants within, or purposefully directed toward, the State of New York.

11.     Venue is proper in this judicial district pursuant to, *inter alia*, 28 U.S.C. § 1391(a)(2) and (a)(3) in that a substantial portion of the events and omissions giving rise to plaintiff's claims occurred in this judicial district and this is a district in which defendants are subject to the court's personal jurisdiction.

## FACTS COMMON TO ALL CAUSES OF ACTION

Leroy McMath's Distribution Deal with Tommy Boy

12.     Non-party Leroy McMath ("McMath") is a music producer who released several successful hip-hop musical recordings in the 1990s through his company Power Entertainment Co., Inc. ("Power Entertainment"), which, upon information and belief, he owns, operates and controls.

13.     Defendant Tommy Boy entered into a Distribution Agreement dated August 15, 2010 with McMath (the "Distribution Agreement"), pursuant to which McMath granted to Tommy Boy the exclusive right to license and sell Power Entertainment's music catalogue.

Under the Distribution Agreement, Tommy Boy is responsible for distributing the royalty payments generated by the aforementioned hip-hop music catalogue (*i.e.*, the Royalty Stream) to the ultimate beneficial owner of those royalties, who, at the time of execution of the Distribution Agreement, was McMath but, as discussed below, is presently plaintiff.

Plaintiff's Purchase of the Royalty Stream

14.    On or about August 3, 2018, McMath, individually and on behalf of Power Entertainment, entered into a Listing Agreement with online royalty marketplace Royalty Exchange, Inc. ("Royalty Exchange") to facilitate his sale of the right to receive royalty payments from the Royalty Stream.  Pursuant to that Listing Agreement, Royalty Exchange acted as a broker to assist the "Seller" - - identified in the Listing Agreement as "Leroy McMath individually and on behalf of Power Entertainment" - - - in finding a purchaser for the Royalty Stream.

15.    Under the Listing Agreement, McMath/Power Entertainment agreed to sell the Royalty Stream through Royalty Exchange.  The Royalty Stream is referred to in the Listing Agreement as the "Asset," and defined as "100% of Seller's interest in the rightsholder's share of all royalties attributable to the sound recordings listed in Exhibit B," which the Listing Agreement states is "currently distributed by Tommy Boy Records/Warner Music Group." (The sound recordings listed in Exhibit B to the Listing Agreement, the exploitation of which generate the Royalty Stream, are hereinafter referred to in this Complaint as the "McMath Catalogue.")

16.    In the Listing Agreement, McMath and Power Entertainment acknowledge that they are "irrevocably assigning the income rights defined in the Asset description, regardless of

which distributor collects those rights," and agree that "if any distributor other than a Current Distributor collects royalties for the Asset, the buyer will be entitled to those royalties."

17.    As contemplated and facilitated by the Listing Agreement, on or about September 20, 2018, McMath, entered into a Purchase Agreement with non-party Matthew Smith, pursuant to which Mr. Smith purchased 100% of the Royalty Stream (the "Smith Purchase Agreement").

18.    In the Smith Purchase Agreement, McMath agreed that he "is and shall remain a member in good standing with [his] distributor [*i.e.*, Tommy Boy] and has not and shall not do anything that would impair Purchaser's right to receive the Assigned Royalties."

19.    On or about September 20, 2018, McMath and Power Entertainment issued an irrevocable Letter of Direction (the "First Letter of Direction") to Tommy Boy that provides, *inter alia*, as follows:  "Tommy Boy Distribution is hereby authorized and directed to pay to Royalty Exchange Inc. ('Assignee'), 100% of my interest in all 'Net Receipts' as defined in and currently payable to me under my distribution agreement with you dated August 15, 2010" - - *i.e.*, the Distribution Agreement.  The First Letter of Direction further confirms that "this direction shall be irrevocable by me in perpetuity."

20.    Pursuant to the irrevocable First Letter of Direction, McMath instructed Tommy Boy to pay 100% of the Royalty Stream to Royalty Exchange, which acted as the administrator for Mr. Smith in collecting from Tommy Boy and remitting to Mr. Smith the Royalty Stream purchased in the Smith Purchase Agreement.

21.    The First Letter of Direction further provided that "Tommy Boy Distribution is also hereby authorized and directed to accept all future requests from the Assignee with regard

to changes to the payee, bank details, and account information associated with the related payments."

22.     On or about December 6, 2018, Mr. Smith entered into a subsequent Purchase Agreement assigning his rights and interests in the Royalty Stream to plaintiff Matthew Peach (the "Peach Purchase Agreement").  The Peach Purchase Agreement states in relevant part:

> "Seller shall direct its royalty distributor, Tommy Boy
> ('Distributor'), and any other paying entity to pay the Assigned
> Royalties directly to Purchaser or Purchaser's administrator.  Seller
> shall execute any document required by any paying entity necessary
> to assign the Assigned Royalties."

23.     On or about December 10, 2018, plaintiff entered into a Royalty Accounting Agreement permitting Royalty Exchange to continue to act as an independent payment administrator and collect the Royalty Stream from Tommy Boy on plaintiff's behalf, pursuant to the First Letter of Direction.

24.     For approximately 34 months - - *i.e.*, from December 2018 through October 2021 - - Tommy Boy wired royalty payments generated by the Royalty Stream, pursuant to the First Letter of Direction, to Royalty Exchange, which subsequently administered those payments for plaintiff and transferred the balance of funds due to him.

25.     The October 2021 royalty statement issued by Tommy Boy to Royalty Exchange shows a "Balance Paid for Previous Period" of $7,989.55, which constituted the September 2021 earnings in respect of the Royalty Stream.  This was the last payment that Royalty Exchange received from Tommy Boy, on behalf of Mr. Peach, in respect of the Royalty Stream.

McMath Defrauds Plaintiff with Tommy Boy's Assistance

26.     On information and belief, McMath has been convicted of at least three separate felonies in multiples states, including Michigan and Georgia, for fraud, identity theft and other

financial crimes.  McMath was most recently incarcerated in the State of Georgia from June 2015 through August 2019.

27.     Consistent with McMath's history of fraudulent acts, on or about October 26, 2021, McMath wrongfully caused a subsequent Letter of Direction (the "Second Letter of Direction") to be issued to Tommy Boy, directing the distributor to deliver all royalty payments, royalty statements and any other correspondence in respect of the Royalty Stream or the McMath Catalogue to McMath, via a new company that McMath had established named Power Artist Music Co., Inc.

28.     The Second Letter of Direction purported to change the payee identified in the explicitly "irrevocable" First Letter of Direction, redirecting the Royalty Stream from Royalty Exchange to "Power Artist Music Inc." ("Power Artist") - - *i.e.*, McMath's new company - - and provided the bank routing and account numbers for wire payments to that newly created entity.

29.     Commencing in November 2021, pursuant to the Second Letter of Direction, Tommy Boy began sending distribution statements and payments generated by the Royalty Stream to McMath and Power Artist.  On information and belief, Tommy Boy knew at this time that McMath had sold the rights to the Royalty Stream through Royalty Exchange, which distributed payments to the ultimate purchaser of those royalties - - *i.e.*, plaintiff Peach.  On information and belief, Tommy Boy also knew that McMath did not posses the right to "revoke" the irrevocable First Letter of Direction, and that the Second Letter of Direction represented an attempt by McMath to divert to his own benefit royalties that were due to plaintiff Peach.

30.     On or about December 20, 2021, McMath, on behalf of "Power Entertainment/Power Artist Music, Inc.," entered into an amendment to the 2010 Distribution

Agreement (the "Amendment") with Tommy Boy providing that Tommy Boy would render to McMath a royalty pre-payment (commonly known in the music industry as an "advance") of $100,000.00 (the "Advance") in respect of future royalties due for the McMath Catalogue - - *i.e.*, the same royalties owned by Mr. Peach. Specifically, that amendment provided that "[t]he Advance shall be recoupable against Fifty Percent (50%) of the Net Receipts otherwise payable to you pursuant to the Agreement and the remaining Fifty Percent (50%) of Net Receipts shall be paid through to you."

31.    Upon information and belief, Tommy Boy wired the $100,0000 advance to McMath on or about December 21, 2021. On information and belief, Tommy Boy was aware of McMath's criminal convictions for fraud and financial crimes, and his history of incarceration, at the time that Tommy Boy entered into the Amendment with McMath and paid him the $100,000 Advance.

32.    On or about January 20, 2022, McMath requested that Tommy Boy email its monthly royalty statements directly to him, referencing Power Entertainment, and removing all reference to Royalty Exchange from those statements, and Tommy Boy agreed to do so, despite its knowledge of Mr. Peach's rights in the Royalty Stream and Royalty Exchange's position as Mr. Peach's administrator of those royalties.

33.    In or about January 2022, Royalty Exchange made inquiry of Tommy Boy concerning why it had stopped receiving royalty statements from Tommy Boy in respect of the Royalty Stream. On or about January 27, 2022, Haylee Palmer, an agent or employee of Tommy Boy, responded to those inquiries by confirming, in an email sent to Royalty Exchange that Tommy Boy had ceased royalty payments to Royalty Exchange because Tommy Boy had agreed to "pay Leroy direct." On information and belief, Tommy Boy knew that those

payments to McMath constituted a diversion of the Royalty Stream that had been purchased, and was owned in its entirety, by plaintiff Peach.

34.    From December 2021 through May 2022, Tommy Boy issued statements and made related royalty payments, constituting 50% of the net royalties generated by the McMath Catalogue, to McMath and his related companies.  The other 50% of those royalties was ostensibly applied by Tommy Boy to reduce the outstanding balance of (or in music industry parlance, to "recoup") the $100,000 advance that Tommy Boy had already paid to McMath.

35.    Between December 2021 and May 2022 Tommy Boy transferred the aggregate sum of $121,701.50 to McMath and his companies, inclusive of the Advance.  On information and belief, those payments were made by Tommy Boy with full knowledge that McMath had sold the right to receive those payments - - *i.e.,* the Royalty Stream - - to plaintiff Peach.

Plaintiff's Georgia Lawsuit Against McMath

36.    Commencing in or about January 2021, Royalty Exchange inquired repeatedly of Tommy Boy and McMath concerning McMath's diversion of the Royalty Stream to his own benefit.  Over the course of the subsequent six months, through June 2021, McMath made multiple misrepresentations to Royalty Exchange regarding the Royalty Stream, including that the delay in payments to Royalty Exchange was the result of McMath's changing distributors from Tommy Boy to a new distributor named "Triad."  This statement was entirely false.

37.    On information and belief, Tommy Boy knew, as a result of Royalty Exchange's repeated inquiries, that Royalty Exchange remained entitled to collect the Royalty Stream on behalf of plaintiff and that the Second Letter of Direction and the Amendment to the Distribution Agreement - - redirecting payment of the Royalty Stream to McMath - - constituted a diversion by McMath of the Royalty Stream owned by plaintiff Peach.  Nonetheless, Tommy

Boy paid McMath the Advance and continued to make royalty payments to McMath under the fraudulent Second Letter of Direction through May 2022.

38.     In June 2022, plaintiff informed McMath of plaintiff's intent to commence a lawsuit against him in Georgia, where McMath resides.  As a direct consequence of that communication, McMath issued yet another Letter of Direction to Tommy Boy (the "Third Letter of Direction") dated June 18, 2022, directing Tommy Boy once again to pay the Royalty Stream to Royalty Exchange, acting as plaintiff's administrator.  This Third Letter of Direction reverses the previous, fraudulent Second Letter of Direction issued by McMath on October 26, 2021.

39.     On information and belief, McMath received no further royalty payments in respect of the Royalty Stream after issuing the Third Letter of Direction on June 18, 2022.

40.     In June 2022, plaintiff commenced a lawsuit against McMath, Power Entertainment and Power Artist in the Superior Court of Georgia, Dekalb County (the "Georgia Action").  In the Georgia Action, plaintiff asserted claims against three defendants - - McMath, Power Entertainment and Power Artist - - for, *inter alia*, breach of contract, conversion, tortious interference with contractual and business relations and fraud.  Tommy Boy was not a party to the Georgia Action.

41.     In the Georgia Action, plaintiff sought to recover damages in the amount of $121,701.50 - - *i.e.*, the aggregate payments made by Tommy Boy to McMath and his companies between December 2021 and May 2022 - - as well as interest thereon, punitive damages, attorneys fees and other relief.

Tommy Boy Defrauds Plaintiff and Converts His Royalties

42.    On information and belief, following McMath's issuance to Tommy Boy of the Third Letter of Direction in June 2022, Tommy Boy ceased making payments to McMath and his companies in respect of the Royalty Stream.  Nonetheless, despite plaintiff's repeated inquiries to Tommy Boy, through his legal counsel, Tommy Boy has not resumed payment of the Royalty Stream to Royalty Exchange, as administrator for plaintiff.

43.    Prior to and during the pendency of the Georgia Action, plaintiff repeatedly reached out to Tommy Boy in an effort to convince Tommy Boy to resume payment of the Royalty Stream to Royalty Exchange, as administrator for plaintiff, but Tommy Boy not only refused to do so, it misrepresented to plaintiff that it was placing the Royalty Stream on hold, and would not make any payments of the Royalty Stream to any person or entity, pending the resolution of the Georgia Action.

44.    In this regard, on or about June 30, 2022, Mr. Peach's counsel in his Georgia Action against McMath spoke by telephone with defendant Parker, who claimed he was representing Tommy Boy (despite having resigned from the bar in or about 2009 in connection with his conviction for tax fraud).  During this conversation, defendant Parker advised Mr. Peach's counsel that Tommy Boy had placed the Royalty Stream on hold and would not make any distributions of royalties to any person or entity until the Georgia Action was resolved by settlement or judgment.

45.    In addition, in an email dated July 6, 2022, defendant Parker, acting on behalf of Tommy Boy, wrote the following to Mr. Peach's counsel in the Georgia Action:

> Since the terms of the letters of direction seem to be in conflict and you have filed a lawsuit against Leroy McMath claiming among other matters a right to the royalties under the agreement, TBA [*i.e.*, Tommy Boy] must take the position of a stakeholder.  TBA cannot account and

pay royalties to anyone unless all parties to the complaint enter into a court approved settlement and dismiss the complaint and/or the judge in the matter orders TBA to pay a certain party.

46.     In sum, in June and July of 2022, when Mr. Peach commenced the Georgia Action against McMath, defendants represented to Mr. Peach that Tommy Boy had placed the Royalty Stream on hold and "cannot account and pay royalties to anyone" pending the resolution of the Georgia Action.

47.     Between July 2022 and March 2025, Parker repeated this representation on multiple occasions to counsel for plaintiff, during telephone conversations in which plaintiff's counsel sought to convince Tommy Boy to resume payment of the Royalty Stream to Royalty Exchange, as administrator for plaintiff.

48.     During these multiple conversations, defendant Parker identified himself as an outside "consultant" for Tommy Boy who functions as the director of business and legal affairs for Tommy Boy.  David Parker's LinkedIn profile identifies him as "Business and Legal Affairs Consultant at Tommy Boy Entertainment and Related Companies."  In fact, Parker is a former attorney who resigned from the New York State bar in 2009 following his felony conviction for tax fraud.

49.     Mr. Peach relied on defendants' repeated representations that Tommy Boy had placed a hold on the Royalty Stream and could not pay any portion of those royalties to any person or entity.  In particular, and without limitation, Mr. Peach relied on that representation by declining to pursue litigation or other collection efforts against Tommy Boy during the pendency of the Georgia Action.  In short, Mr. Peach believed defendants' representations - - which, as set forth below, were entirely false and fraudulent - - that, upon the resolution of the Georgia Action, Tommy Boy would release to Mr. Peach the full amount of the Royalty Stream generated in or after June 2022, which it had been holding during the pendency of that Action.

13

50.     On or about January 3, 2025, the Court in the Georgia Action granted summary judgment to plaintiff on all of his claims and directed the parties in that action to present evidence at a "final hearing" concerning the calculation of damages to be awarded to plaintiff against McMath and his companies.

51.     On or about January 28, 2025, counsel for plaintiff emailed defendant Parker to inform him that, as alleged above, the court in the Georgia Action had issued summary judgment in Mr. Peach's favor against McMath.  As a result, plaintiff's counsel confirmed to defendants that "the matter is resolved (with the exception of the precise amount of damages, to be determined at a further hearing)" and "Tommy Boy should release the funds on hold and restart payment to Royalty Exchange under the third Letter of Direction from McMath."

52.     Contrary to defendant Parker's representations, as alleged above, Tommy Boy did not release (and still has not released) any royalties to Royalty Exchange or plaintiff, even after receiving confirmation that the Georgia Action was resolved in Mr. Peach's favor.

<u>Tommy Boy Releases Royalty Data Confirming Its Conversion of Plaintiff's Royalties</u>

53.     During the course of the discussions between plaintiff's counsel and defendant Parker, on behalf of Tommy Boy, counsel for plaintiff requested that Tommy Boy provide royalty statements for the period June 2022 through the present - - *i.e.*, the period following McMath's issuance of the Third Letter of Direction redirecting payment of the Royalty Stream to Royalty Exchange, as administrator for plaintiff.  Through this request, plaintiff sought to learn the amount of royalties generated by the Royalty Stream that Tommy Boy had purportedly placed on hold and would release upon resolution of the Georgia Action.

54.     On or about March 21, 2025, after months of delay, Tommy Boy finally provided certain data in respect of the Royalty Stream in the form of an Excel file (the "Royalty

Data"). As reflected in the Royalty Data, Tommy Boy asserts, *inter alia*, that between June 2022 and the end of 2023, approximately $193,000 in royalties had been generated as part of the Royalty Stream. Of those royalties, the Royalty Data shows that (1) Tommy Boy diverted to itself approximately $78,000 as partial repayment of the Advance to McMath; (2) Tommy Boy paid approximately $30,000 to defendant Parker, labelling them as "legal fees," despite Parker's status as a disbarred attorney; (3) Tommy Boy was purportedly holding approximately $84,438 on balance for the benefit of Mr. Peach; and (4) Tommy Boy had stopped accounting for the Royalty Stream altogether as of January 2024 and attributed $0 to the Royalty Stream thereafter.

55.    When counsel for Mr. Peach inquired of defendant Parker why the Royalty Data showed no royalties in and after January 2024, Parker responded, in an email dated April 21, 2025, that "Power Entertainment, related entities and Leroy McMath ('Power') sold its interest in the copyright of the sound recordings to its catalog on December 7, 2023. After that date, Power was no longer involved with the catalog." Defendant Parker did not identify the party that supposedly purchased the McMath Catalogue in December 2023 or provide any other information concerning that transaction.

56.    On information and belief, including without limitation based on representations made by McMath to plaintiff's counsel, it was defendant Tommy Boy that acquired the McMath Catalogue in December 2023. Tommy Boy failed to disclose to plaintiff's counsel that it was the "purchaser" of the McMath Catalogue referenced by defendant Parker, despite Tommy Boy's knowledge that any such sale by McMath would be subject to plaintiff Peach's prior purchase of the Royalty Stream. Instead, Tommy Boy's communications intentionally created the misimpression that McMath had sold his catalogue to a third party, and that Tommy

15

Boy was thus no longer receiving any royalties resulting from the exploitation of the McMath Catalogue. This was defendant Parker's explanation for why Tommy Boy stopped collecting and accounting for royalties owed to plaintiff commencing in January 2024.

57.    On information and belief, contrary to defendants Parker's intentional misrepresentations, following its acquisition of the McMath Catalogue in December 2023, Tommy Boy has been collecting royalties related to the McMath Catalogue and *keeping those royalties for itself*, without paying to plaintiff Peach the Royalty Stream owed to him.

58.    The approximately $30,000 dollars in "legal fees" purportedly paid to defendant Parker, as set forth in the Royalty Data, are entirely improper for at least two reasons, without limitation: (1) defendant Parker resigned from the New York bar for disciplinary reasons in 2009 following his conviction for tax fraud, and thus the "legal fees" purportedly paid by Tommy Boy are payments in support of the unauthorized practice of law; (2) even if defendant Parker could properly receive payment of "legal fees" (and he cannot), Tommy Boy has no legal right to deduct such fees from the amount of the Royalty Stream payable to plaintiff.

59.    In sum, Tommy Boy has refused to pay to plaintiff any portion of the Royalty Stream since its final payment to Royalty Exchange in October 2021, despite plaintiff's unquestionable right to receive payment of those royalties through his administrator, Royalty Exchange. Rather, Tommy Boy has (1) retained a large portion of the Royalty Stream for its own benefit; (2) paid a portion of those royalties to defendant Parker, a disbarred attorney, as improper "legal fees" for his unauthorized practice of law; and (3) kept for its own benefit the entire Royalty Stream generated in and after January 2024 based on its own purported acquisition of the McMath Catalogue.

60.     On or about June 24, 2025, following a "final hearing" in the Georgia Action, the Georgia court issued a judgment in favor of Mr. Peach and against McMath and his companies in the amount of $427,710.30, including pre-judgment interest, punitive damages and attorneys' fees.

## COUNT I
### (Conversion)

61.     Plaintiff incorporates herein by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

62.     Plaintiff has an ownership right and interest in the Royalty Stream and a right to possession of all royalties that constitute any part of the Royalty Stream - - *i.e.,* royalties payable by McMath's distributor in connection with the exploitation of the McMath Catalogue.

63.     Defendants have assumed control over the Royalty Stream and have diverted those funds to their own benefit despite no right or authority to do so.  In this regard, as set forth above, defendant Tommy Boy has retained and refused to pay to plaintiff any royalties constituting the Royalty Stream and has diverted a portion of those royalties to McMath and defendant Parker, all without legal authority.

64.     As a result of plaintiff's conversion of the Royalty Stream, plaintiff has been damaged in an amount to be determined at trial.

## COUNT II
### (Unjust Enrichment)

65.     Plaintiff incorporates herein by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

66.     Defendants have benefited at plaintiff's expense by withholding and retaining for their own benefit, and refusing to pay to plaintiff, the Royalty Stream.

67.     It is against equity and good conscience to permit defendants to retain the Royalty Stream and to continue to enjoy the benefit of those funds, at plaintiff's expense.

68.     Defendants have been unjustly enriched in the amount of the Royalty Stream that they have retained and refused to pay to plaintiff, despite plaintiff's undeniable right to receive payment of those royalties.

69.     As a result, the Court should order defendants to disgorge to plaintiff all royalties constituting part of the Royalty Stream that defendants have received and retained, as well as award such damages and other related relief as determined at trial.

## COUNT III
## (Fraud)

70.     Plaintiff incorporates herein by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

71.     As alleged above, defendant Parker, acting on behalf of defendant Tommy Boy, misrepresented on multiple occasions to counsel for plaintiff that Tommy Boy had placed a hold on the Royalty Stream, and could not make payment of royalties generated as part of the royalty Stream to any person or entity.  This was a material misrepresentation, as Tommy Boy had not, in fact, placed a hold on the Royalty Stream and did distribute the Royalty Stream to individuals and/or entities other than plaintiff, including Tommy Boy itself and Parker.

72.     In addition, defendant Parker, acting on behalf of defendant Tommy Boy, misrepresented to counsel for plaintiff that McMath had "sold [his] interest" in the McMath Catalog, failing to disclose that, on information and belief, Tommy Boy was the purchaser of the McMath Catalog, and intentionally giving the false impression that a third party had purchased the copyrights in the McMath Catalog.  Defendants made this misrepresentation in an

effort to mislead plaintiff into believing that Tommy Boy was no longer distributing or receiving royalties in respect of the McMath Catalogue, which is false.

73.     Defendants knew that their misrepresentations concerning the placing of a hold on the Royalty Stream, and the purchase of the McMath Catalogue, were false and misleading at the time they were made.

74.     In making those false representations, defendants intended to induce plaintiff to fail to take any legal or other action against Tommy Boy seeking payment of the Royalty Stream and/or injunction against further distribution of the Royalty Stream, including without limitation the filing of a lawsuit or other collection actions.

75.     Plaintiff justifiably relied on defendants' misrepresentations by declining to file a lawsuit or take any other action against Tommy Boy in respect of the Royalty Stream for the entire period from June 2022 through the filing of the present action.  Plaintiff decided to "stand down" against Tommy Boy during this period of nearly three years because he reasonably believed that, upon the resolution of the Georgia Action, Tommy Boy would release to plaintiff the entire amount of the Royalty Stream purportedly being held by Tommy Boy for his benefit.

76.     During the period of plaintiff's reasonable reliance on defendants' material misrepresentations, and contrary to those fraudulent statements, Tommy Boy diverted substantial portions of the Royalty Stream to itself and defendant Parker.

77.     Plaintiff has been damaged as a result of defendants' fraudulent misrepresentations in an amount to be determined at trial, including without limitation the amount of royalties diverted by Tommy Boy to itself and defendant Parker.

## COUNT IV
## <u>(Promissory Estoppel)</u>

78.    Plaintiff incorporates herein by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

79.    As alleged above, defendants made a clear and unambiguous promise to plaintiff that Tommy Boy had placed, or would place, a hold on the Royalty Stream and would not make payment of royalties generated as part of the royalty Stream to any person or entity pending the resolution of the Georgia Action.

80.    Plaintiff reasonably and foreseeably relied on defendants, promises by declining to file a lawsuit or take any other action against Tommy Boy in respect of the Royalty Stream for the entire period from June 2022 through the filing of the present action.  Plaintiff decided to "stand down" against Tommy Boy during this period of nearly three years in reliance on defendants' promise that Tommy Boy would place a hold on the Royalty Stream and, upon the resolution of the Georgia Action, would release to plaintiff the entire amount of the Royalty Stream purportedly held by Tommy Boy for his benefit.

81.    During the period of plaintiff's reliance on defendants' promises, and contrary to those promises, Tommy Boy diverted substantial portions of the Royalty Stream to itself and defendant Parker.

82.    Plaintiff has been damaged as a result of his reasonable and foreseeable reliance on defendants' false promises in an amount to be determined at trial, including without limitation the amount of royalties diverted by Tommy Boy to itself and defendant Parker.

## **PRAYERS FOR RELIEF**

WHEREFORE, based upon the foregoing allegations and averments, plaintiff Matthew

Peach respectfully demands that this Court enter judgment in his favor and against defendants

as follows:

A.     Directing defendants to release and pay to plaintiff all royalties constituting any portion of the Royalty Stream that defendants have received and retained for their own benefit, together with interest as provided by law.

B.     Compensatory damages in an amount to be determined at trial.

C.     Punitive and/or exemplary damages in an amount to be determined at trial.

D.     An award of attorney's fees and costs incurred by plaintiff in connection with this action.

E.     Such other and further relief as this Court deems just and appropriate.


## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues and claims so triable.


Dated:   September 19, 2025
         New York, New York


                                    **ROSENBERG, GIGER & PERALA P.C.**


                                    By: _Matthew H. Giger_
                                    Matthew H. Giger
                                    John J. Rosenberg
                                    152 West 57th Street, 18th Floor
                                    New York, NY  10019
                                    Tel  (646) 494-5000
                                    Fax  (646) 595-0590

                                    *Attorneys for Plaintiff Matthew Peach*